# SUPREME COURT

OF THE

## STATE OF ILLINOIS,

### JULY TERM, 1841, AT SPRINGFIELD.

*Note.* WILSON, Chief Justice, and SMITH, Justice, were not present at this term.

---

HORACE WOODWARD, plaintiff in error, *v.* GILBERT TURN-
BULL, Treasurer of Warren County, defendant in error.

*Error to Warren.*

§ 5 of "*An Act to incorporate the inhabitants of such towns as may wish to be incorpo-
rated,*" confers upon the president and trustees of incorporated towns the power
"to provide for licensing public shows," and, by a fair construction, suspends,
within the limits of such towns, so much of the act of 1829, as requires a license
from the county treasurer.

THIS cause was heard in the Court below, at the October term,
1838, before the Hon. James H. Ralston, without a jury, upon an
agreed case.   Judgment was rendered against the plaintiff in error
for $20 and costs of suit.

O. H. BROWNING and A. C. HARDING, for the plaintiff in error.

A. WILLIAMS, for the defendant in error.

DOUGLASS, Justice, delivered the opinion of the Court:
This was an action of *debt*, brought by the treasurer of Warren
county against Woodward, for exhibiting a menagerie of animals
and a circus, in the town of Monmouth, in said county, without
having obtained a license in accordance with the provisions of "*An
act to prohibit shows of wax-figures, tricks of jugglers,*" *&c.*, (1) ap-
proved January 23, 1829.
It is admitted on the record, that the town of Monmouth was
regularly incorporated under the provisions of "AN ACT *to incor-
porate the inhabitants of such towns as may wish to be incorporated,*"
(2) approved February 12, 1831, and also that said Woodward,

(1) R. L. 582; Gale's Stat. 659.        (2) R. L. 362; Gale's Stat. 381.

before exhibiting said menagerie and circus, applied to the proper authorities of said town, and in due form obtained a license and permit in conformity with the provisions of said last recited act.

The only question presented for the decision of the Court is, whether the defendant below was required to obtain two licenses, one from the president and trustees of the town of Monmouth, and another from the treasurer of the county of Warren; or whether one was sufficient to authorize him to exhibit said menagerie and circus within the limits of said town.

We are of the opinion that the law requires but one license.

The fifth section of the act of 1831, (1) confers upon the president and trustees of incorporated towns, the power " to provide for licensing public shows,". and, by a fair construction, suspends, within the limits of such towns, so much of the act of 1829, as requires a license from the county treasurer. The defendant below, having complied with the provisions of the act of 1831, by obtaining a license from the president and trustees of said town, was not required by law to obtain a license from the county, unless he wished to exhibit without the limits of the town. The judgment of the Circuit Court is therefore reversed.

SCATES, Justice, delivered the following dissenting opinion:

This cause comes into this Court by writ of error to the Circuit Court of Warren county, to review the judgment of that Court upon an agreed case between the parties, involving only, by the assignment of error, a *construction of two several acts of the legislature*, passed in *pari materia*.

The action in this case is for the recovery of a penalty, and the act (2) should receive a strict construction, aided by whatever light may be received from statutes passed upon the same subject, and should not be extended beyond the plain import and meaning of the legislature. The language and meaning are too plain and clear to admit of a doubt, that the full power to grant licenses for shows, is conferred upon the county treasurer; and it inflicts a penalty of not less than ten, nor more than one hundred dollars, upon any person who shall exhibit, without such license, any where within the body of the county. Two years after the passage of this act, the legislature, by another act, (3) on the same subject, confers power upon incorporated towns to pass ordinances for licensing shows, amongst other things, and with power to impose fines, not exceeding five dollars, for any one breach of an ordinance, and without a clause repealing any former law establishing police regulations. I can see no repugnance ·in these provisions of the two acts, which would warrant, by construction of the provisions of the latter, a repeal of the former,· by implication of law. I regard the latter as a cumulative power and remedy ·con-

ferred upon that portion of the inhabitants of the county, resident within the incorporation, adapted to their situation as such. In the same section, power is conferred upon the trustees to levy and collect annually a tax for the purpose of carrying their powers into execution. A different rule of construction than the one I have laid down, it seems to me, would repeal any former law conferring a similar power upon the county, if a rule of implication such as this, is to prevail. A sufficient reason may be supposed to have existed in the minds of the legislature for making these powers and remedies cumulative, in the fact that much disorder and confusion, and even danger, might arise, in populous cities and villages, from the concourse that would attend such exhibitions, if they had not the power to prevent them, by refusing a license, when deemed expedient; and, therefore, the legislature conferred upon them this power, by suitable ordinances and penal sanctions, to provide for their own good order and security, without intending to abridge the power conferred upon the county over its whole territory. The only repugnance seems to be that abstract principle of justice which would forbid receiving two payments for a part of the same privilege. Yet in criminal proceedings we witness a conviction and fine before a justice, for a breach of the peace, and in the Circuit Court a conviction and fine and imprisonment for the same act. The same act of a party may incur two penalties, and constitute two offences, and subject the offender to two separate punishments, imposed by two separate acts of the legislature, not plainer, nor less repugnant in their provisions, than these.

By a rule of repeal by implication, the 52d section of the Criminal Code, defining an assault with intent to murder, &c., and imposing a penalty, passed in 1833, would repeal the first section of the "*Act to extend the jurisdiction of justices of the peace,*" passed in 1826, because the latter imposes a fine for a breach of the peace, which offence is included in the former. I see no difference between the infliction of two punishments for the same act, when mere intent is charged to constitute one of the misdemeanors arising out of it, and the imposition of two penalties for the same act, if done at a particular place. No one will contend that there is such repugnance in these last statutes, as will repeal the latter, by implication. Yet there is more that is repugnant to our sense and feelings of justice, in the first case, than in the last.

The record does not show that the trustees had passed any ordinance providing for the licensing of shows and imposing penalties. Still, as it is agreed that license was duly obtained, and counsel have not insisted on any objection of this sort, I have considered the question as submitted by them.

I am of opinion, therefore, that the judgment be affirmed.

*Judgment reversed.*